IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY FIORETTI AND MICHELLE M. FIORETTI,<br><br>            Plaintiffs,<br><br>    v.<br><br>CFI MORTGAGE, INC., et al.,<br><br>            Defendants.         / | No. MISC 06-80070 CRB<br><br>**ORDER** |

Gary and Michelle Fioretti ("Plaintiffs") assert that Power Air Corp. ("Power Air") has failed to comply with two orders entered by this Court — first, an Ex Parte Restraining Order entered April 19, 2006, and second, an Assignment Order entered June 20, 2006. They seek $66,311.24 in compensation for payments that they allege have been wrongfully made to Stephen Williams. In addition, they seek $5,200 in attorney's fees, as well as sanctions for Power Air's failure to comply with a subpoena served upon it by Plaintiffs.

**DISCUSSION**

The Court finds that only a portion of the funds sought by Plaintiffs are owed to them by Power Air under this Court's previous orders.

**1. April Salary.** The Court holds that its Assignment Order did not transfer to Plaintiffs any right to or interest in the salary paid to Stephen Williams in April of 2006. The record indicates that Williams received a monthly salary on the fifteenth of each month. The Court's initial restrictive order, which forbade Power Air from transferring certain funds

1 (including salary) to Williams, did not go into effect until April 19, 2006. Thus, by the time 2 the restrictive order went into effect, Power Air had already paid to Williams his salary for 3 the month. The April salary was an obligation *formerly due* and *already paid* to Williams. 4 Therefore, the April salary was not encompassed by the restrictive order, which 5 prospectively prohibited the transfer of certain money and interests "due and owing to" 6 Williams. Power Air was under no obligation to retrieve any portion of Williams' April 7 salary for Plaintiffs' benefit.

8 **2. Severance Pay.** Although the Court's Assignment Order would have captured any 9 severance pay owed to Williams by Power Air, no such severance pay is actually owed under 10 the contracts into which those two parties entered. Both the original employment contract 11 (which applied when Williams was President of Power Air) and the superseding contract 12 (which applied when Williams assumed the role of a consultant for the company) provided 13 that he could be terminated "upon such [a] period [of time] as may be agreed upon between 14 [Williams] and [Power Air]." In the event of such a mutually agreeable early termination, 15 the contract obligated Power Air only "to continue to pay [Williams] up to the date of 16 termination and those retirement and/or employee benefits which have been earned or 17 become payable up to the date of termination."

18 That is exactly what happened here: Power Air and Williams mutually agreed to go 19 their separate ways. It is easy to see why they would have reached a consensual agreement, 20 given that the company was employing Williams for consulting services and yet paying his 21 monthly salary to Plaintiffs. In the event that Williams ever actually obtains a right to 22 severance pay from Power Air, or in the event that Power Air decides that it wishes to 23 provide a severance package to Williams, the Assignment Order plainly would require the 24 transfer of such funds to Plaintiffs. Until Williams' entitlement to such a severance package 25 is established in this Court or another court of law — and the Court holds that no such right 26 to severance exists on the current record — Power Air has no obligation to pay any putative 27 severance to Plaintiffs.

28

2

**3. Stock.** Plaintiffs argue that Power Air should relinquish all stock that Williams received from the company as part of his compensation package. Power Air, however, avers that it did not actually give any of the company's stock to Williams. Rather, it gave him *options* to purchase stock. According to the company's CFO, these options have vested, but Williams has not yet exercised them. The Court finds that these options fall within the scope of the Court's Assignment Order, in that they constitute "money or property due [to Williams] from any contractual agreements with [Power Air]." Thus, the Court orders that any outstanding right to or interest in stock options be transferred from Williams to Plaintiffs, who may exercise these options in their discretion.

**4. Expense Reimbursements.** Finally, Plaintiffs argue that Power Air improperly reimbursed Williams for business expenses following the entry of this Court's Restraining Order, which prohibited the transfer of "any . . . payment from commissions, royalties, intellectual property rights, stock options, stocks, bonds, deferred compensation, insurance payments, severance payments, accounts receivables and/or contract receivables." They contend that Power Air violated this Restraining Order every time that it gave expense reimbursements to Williams after the entry of the Order on April 19, 2006.

Power Air responds that the Restraining Order does not reach so broadly. The company argues that nothing in the Restraining Order clearly or explicitly prevents the reimbursement of business expenses, and that such reimbursements were not prohibited by this Court until the entry of its subsequent Assignment Order, whose broader language required Power Air to relinquish to Plaintiffs "[a]ny and all rights to any interest or payment now due or to become due in the future to [Williams] in any money or property due him from any contractual agreements with [Power Air]." Thus, Power Air concludes that it was obligated to cease reimbursing Williams only upon the entry of the subsequent, more expansive Assignment Order on June 19, 2006.

The Court holds that both the Restraining Order and the Assignment Order prohibited Power Air from reimbursing Williams for business expenses. The Restraining Order prohibited, among other things, "payment from . . . contract receivables." While the parties

3

dispute the scope of the term "contract receivable," the Court is persuaded that this term encompasses reimbursements for business expenses. The term receivable connotes "[a]n amount owed" or an item "subject to a call for payment," typically, though not always, by a business customer. BLACK'S LAW DICTIONARY 1296 (8th ed. 2004). It follows, then, that a "contract receivable" is an amount owed from one party to another by virtue of a contractual obligation. Other courts have used the term in precisely this manner. See, e.g., In re Guy F. Atkinson Co., 242 B.R. 497, 499 (B.A.P. 9th Cir. 1999) (describing payments due to "general contractors on large construction projects" as "contract receivables"); Feldmeier v. Mortgage Sec. of Santa Barbara, 34 Cal. App. 2d 201, 233 (1939) (describing "the total balance due to the Company on outstanding deeds of trust, mortgages, and contracts" as "contract receivables"). The business expenses reimbursed by Power Air clearly fall within the scope of this definition; they constitute an amount of money owed by Power Air to Williams by virtue of his employment contract, which obligated the company to "reimburse [Williams] for reasonable, pre-approved, entertainment, travel, lodging and other miscellaneous expenses, whether local or out-of-city, incurred on its behalf and directly related to the performance of his duties."

Power Air's attempt to confine the meaning of the term "contract receivables" to "installment payments" or "fixed and certain stream[s] of future income" is unconvincing. Nothing in the term "contract receivables" mandates regularity or consistency of payment; it requires only a contractual obligation to pay, and Power Air's reimbursements to Williams therefore fall within the scope of the term.

Accordingly, the Court finds that Power Air was required to pay to Plaintiffs all reimbursements for expenses incurred by Williams while the Restraining Order was in effect between April 19, 2006, and June 19, 2006. Such expenses totaled $21,792. In addition, as Power Air has conceded, it was also required to pay to Plaintiffs all reimbursements sent to Williams after the Assignment Order went into effect on June 19, 2006. Although the parties' original submissions suggested that this amount was $2,851.71, at oral argument Power Air represented to the Court that the true amount of Williams' reimbursements in July

4

of 2006 was $11,000. Therefore, the Court finds that Power Air was also required to submit to Plaintiffs this payment of $11,000. Together, these reimbursements total an amount of $32,792 that Power Air paid to Williams but should have paid to Plaintiffs.[1]

**CONCLUSION**

In sum, the Court finds that both its Restraining Order and Assignment Order required Power Air to pay to Plaintiffs any and all amounts that it owed to Williams for reimbursement of expenses. Accordingly, the Court hereby orders Power Air to pay to Plaintiffs a total amount of $32,792 — the amount for which Power Air reimbursed Williams following entry of this Court's Restraining Order on April 19, 2006. The Court further orders the transfer to Plaintiffs of any right to and interest in stock options granted by Power Air to Williams. The Court finds that Plaintiffs claims to the other funds allegedly wrongfully distributed by Power Air are without merit. Accordingly, the Court GRANTS in part and DENIES in part Plaintiffs' Motion to Enforce the Assignment Order.

The Court DENIES Plaintiffs' motion for sanctions and attorney's fees. The Court DENIES as moot Plaintiffs' motion to compel compliance with the subpoena previously served on Power Air in connection with this motion.

**IT IS SO ORDERED.**

Dated: November 16, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[1] Power Air has argued that its reimbursement of Williams' expenses was not improper because Power Air was not aware of the Restraining Order. While the Court recognizes that Plaintiffs' motion for the Restraining Order was made on an ex parte basis, Plaintiffs have provided ample evidence that Power Air was in fact aware of the Order shortly after it issued. Indeed, Plaintiffs provided proof that they served a copy of the Restraining Order on Power Air on three separate occasions — once by mail, on Thursday, April 20, 2006, see Decl. of Bryan Sampson, Ex. 17; once by personal service on an authorized agent named Margaret Wilson in Los Angeles, California, on the afternoon of Monday, April 24, 2006, see Decl. of Bryan Sampson, Ex. 18; and again by personal service on an office manager named Lois Ruby in Livermore, California, on the afternoon of Wednesday, April 26, 2006, see Decl. of Bryan Sampson, Ex. 19. Power Air's claim that it did not know of the Restraining Order is not tenable in light of this evidence. Indeed, Power Air seems to have recognized the weakness of this position when, faced with Plaintiffs' proof of service, the company abandoned its lack-of-notice argument in a supplemental memorandum.